# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DAMON DONTE BEALIN,**

   Petitioner,

   v.                                      Case No. 19-CV-1478

**BRIAN FOSTER,**

   Respondent.

---

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

---

Damon Donte Bealin, who is currently incarcerated at the Waupun Correctional Institution, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Amended Petition, Docket # 8.) He was convicted of first-degree reckless homicide and felon in possession of a firearm and sentenced to 40 years of initial imprisonment and 15 years of extended supervision. Bealin alleges that his conviction and sentence are unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

*Jury Trial*

As summarized by the Wisconsin Court of Appeals, the State charged Bealin with first-degree reckless homicide and felon in possession of a firearm for the killing of Tycer Lee. (*State of Wisconsin v. Bealin*, Appeal No. 2017AP1516-CR (Wis. Ct. App. May 22, 2018), Docket # 1-1 at ¶ 1.) Police officers found Lee's body in the street in the middle of the night. (*Id* at ¶ 2.) As police officers were conducting their investigation at the crime

scene, M.D.[1] approached the officers and told them that he saw the shooting. (*Id.*) M.D. ultimately spoke to investigators twice and said that he knew both Lee and the shooter, Bealin. (*Id.*)

At trial, M.D. testified that he knew Bealin and Lee. (*Id.* ¶ 3.) M.D. said that he had bought and used drugs at Bealin's house and had hung out and used drugs with Lee. (*Id.*) He testified that, on the night of the shooting, he was on the sidewalk about to roll a cigar containing marijuana and cocaine. (*Id.* ¶ 4.) Lee walked by, and M.D. told him that he had drugs. (*Id.*) M.D. testified that Lee said, "[H]old on. I've got to do something." (*Id.*) M.D. testified that he saw Lee walk down the street and as Lee walked away, M.D. saw a car go by, a "light yellow Ford" that Bealin drove "frequently." (*Id.* ¶¶ 4–5.) He testified that he "heard some tires," which caused him to look down the street. (*Id.* ¶ 5.) M.D. saw Lee and Bealin talking and that he was "positive" that it was Bealin that he saw talking to Lee. (*Id.*) M.D. saw "a little commotion" between the two men and then, while continuing to roll his cigar, heard a gunshot. (*Id.*) He crouched behind a car until the shooting ended and saw Bealin's car drive away. (*Id.*)

M.D. started walking toward Lee's body but then concluded that Lee was dead and decided to go home. (*Id.* ¶ 6.) He said that the rest of the night was "a blur" and "that he felt like he was "in shock." (*Id.*) M.D. testified that he "went to Bealin's house, where he consumed cocaine, alcohol, and marijuana." (*Id.*) He said that the atmosphere at the house

---

[1] The Wisconsin Court of Appeals used the witness' initials. I will do the same here.

was "tense." (*Id.*) Bealin was there, and he was "[j]ittery, whispering back and forth" and "looking out windows." (*Id.*)

After M.D. left Bealin's house, he "went a few places" but could not remember where. (*Id.* ¶ 7.) He eventually encountered a police officer assisting the shooting investigation and said that he knew something about it. (*Id.*) Bealin "spoke with a detective in a police car and then drove around the neighborhood with the detective, showing him where Bealin lived and pointing out Bealin's car." (*Id.*)

The State called two additional witnesses. (*Id.* ¶ 8.) One young woman testified that on the night of the shooting, she was at Bealin's house. (*Id.*) She woke up to Bealin "'yelling and screaming' and telling everyone to 'get up' and 'get [their] stuff.'" (*Id.*) She also testified that "she saw Bealin wipe off a gun with a white towel and pass the gun to another person." (*Id.*) Bealin looked "afraid, scared." (*Id.*)

The other State's witness testified that she knew Bealin from visiting his house, which she described as a "smoke house" or "crack house" where people consumed drugs. (*Id.* ¶ 9.) She also said that she was Lee's friend and that, before Lee died, "she heard Bealin say he was angry with Lee for stealing a large amount of crack cocaine from Bealin." (*Id.*)

Bealin did not testify at trial and did not call any witnesses. (*Id.* ¶ 10.) Bealin's defense was that M.D. "was mistaken about what he saw and that Bealin was not involved with Lee's death." (*Id.*) The jury convicted Bealin of both charges. (*Id.*)

3

*Postconviction*

Bealin filed a postconviction motion alleging that his trial counsel was ineffective. (*Id.* ¶ 11.) In his motion, Bealin acknowledged that trial counsel impeached M.D.'s credibility by asking questions about his drug usage, his request that the detective give him money, and the fact that he had only a limited opportunity to see the shooting based on where he was standing and his preoccupation with the cigar. (*Id.*) However, Bealin asserted that his trial counsel provided ineffective assistance by failing to impeach M.D. with two inconsistencies between his testimony and his statements to the detective. First, Bealin argued M.D.'s statement to the detective that he last saw Lee the day before the shooting conflicted with his testimony that he spoke with him right before it happened. (*Id.* ¶ 12.) Second, Bealin claimed that M.D.'s testimony that he saw Bealin outside of the car was inconsistent with his statement that "Lee was 'by the driver's door of the yellow Ford' when he was talking to Bealin." (*Id.* ¶ 13.)

The circuit court denied Bealin's motion without holding an evidentiary hearing. (*Id.* ¶ 16.) As to the first inconsistency, the trial court agreed with Bealin that M.D.'s testimony that he communicated with Lee just before the shooting contradicted his statement to the detective that the last time he saw Lee was the night before the shooting. (*Id.*) However, the circuit court concluded that trial counsel's failure to point out that inconsistency was not prejudicial to Bealin. (*Id.*) The circuit court explained as follows:

> This court presided over the trial and recalls M.D.'s demeanor and testimony. Based on what the court heard and observed, there is not a reasonable probability that M.D. recollection of when he had last seen the victim would have any bearing on the

jury's verdict. If anything, his history of daily drug and alcohol use as relayed to the jurors would have impacted the verdict more than when he last seen the victim, as well as his continual reference to his poor memory of the incident from the year before. Here, M.D. testified that he knew the defendant drove the car he saw prior to the shooting; that he saw the defendant driving it on the night of the shooting; that he knew the defendant previously, having gone over to his house to get drugs or do drugs; that he saw the defendant talking with Lee that night; that he heard a shot; and that he then saw the defendant drive off with Lee laying there in the street. He identified the defendant from a photo, and he stated he had no doubts at all about seeing the defendant with Lee just before Lee was shot. The witness was completely certain that the defendant was the person who shot Lee and even if he had two versions about who was standing where at the time, there is not a reasonable probability that his identification of the defendant would have been placed in jeopardy because of that inconsistency. In sum, the court finds that trial counsel was not ineffective, and even if his failure to ask M.D. questions about an inconsistency of this nature can be deemed deficient performance, it did not prejudice the defendant's case. M.D was positive about the shooter's identity and had seen the defendant and his car previously in the neighborhood.

(*Id.*)

Regarding the second alleged inconsistency, the circuit court agreed with the State that the detective's report did not indicate where M.D. said Bealin was standing and, therefore there was no prior inconsistent statement. (*Id.* ¶ 17.)

On direct appeal, Bealin raised his claim that his trial counsel was ineffective. The Court of Appeals rejected this argument and affirmed the circuit court, and the Wisconsin Supreme Court denied review.

On October 9, 2019, Bealin filed a petition for writ of habeas corpus in this court. (Docket #1.) In an order dated October 10, 2019, I advised Bealin that his petition did not state a ground for relief and granted him the opportunity to file an amended petition. (Docket # 5.) On November 6, 2019, Bealin filed an amended petition claiming that the trial

5

court erred in denying him a *Machner* hearing before denying his post-conviction motion for a new trial because trial counsel was ineffective for not impeaching the State's sole key witness with his initial statements to the police. (Docket # 8.) I liberally construed Bealin's amended petition to assert a claim of ineffective assistance of trial counsel. (Docket # 11.) Bealin's habeas petition is fully briefed and ready for review.

## STANDARD OF REVIEW

Bealin's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

6

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Bealin argues he is entitled to habeas relief because his trial counsel was ineffective in failing to impeach the State's primary witness, M.D., on two prior inconsistent statements: (1) M.D. testified that he spoke to the victim, Lee, immediately prior the shooting, but told

7

the police prior to trial that he last saw Lee the day prior to the shooting; and (2) M.D. testified that Bealin stood outside his car, whereas the police report indicates that M.D. said Lee was by the driver's door of the car when he was talking with Bealin. Bealin argues that by not questioning M.D. on these two inconsistent statements, trial counsel was ineffective because the jury could not properly evaluate M.D.'s credibility.

The State argues that Bealin's claim is procedurally defaulted because the Wisconsin Court of Appeals resolved it based on an independent and adequate state procedural rule. Alternatively, the State argues the court of appeals reasonably applied *Strickland v. Washington,* 466 U.S. 668 (1984) when it determined that Bealin was not prejudiced by trial counsel's failure to ask M.D. about his prior statements.

1. *Procedural Default*

A federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment. *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). An independent state ground exists "when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012) (citing *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010)). A state law ground is adequate "when it is a firmly established and regularly followed state practice at the time it is applied." *Id.* The independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural

requirement." *Moore*, 295 F.3d at 774 (internal quotation and citation omitted). But this doctrine will not bar habeas review unless the state court actually relied on the procedural default as an independent basis for its decision. Thus, "if the decision of the last state court to which the petitioner presented his federal claims fairly appears to rest primarily on the resolution of those claims, or to be interwoven with those claims, and does not clearly and expressly rely on the procedural default, we may conclude that there is no independent and adequate state ground and proceed to hear the federal claims." *Id.* A state court may reach the merits of a federal claim in an alternative holding; if it does so explicitly, then the independent and adequate state ground doctrine "curtails reconsideration of the federal issue on federal habeas." *Id.* (internal quotation and citation omitted).

Under Wisconsin law, it is a prerequisite to appellate review of an ineffective assistance claim that the challenged attorney explain his or her actions at a postconviction evidentiary hearing. *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). The postconviction court must hold a *Machner* hearing if the defendant's motion "on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶ 9, 274 Wis. 2d 568, 682 N.W.2d 433. Moreover, the court may deny a postconviction motion for a hearing "if all the facts alleged in the motion, assuming them to be true, do not entitle the movant to relief; if one or more key factual allegations in the motion are conclusory; or if the record conclusively demonstrates that the movant is not entitled to relief." *Id.* at ¶ 2, 274 Wis. 2d 568, 682 N.W. 2d 433 (citing *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996), and *Nelson v. State*, 54 Wis. 2d 489, 497, 195 N.W.2d

9

629 (1972)). Defendants seeking a postconviction motion must "allege the five 'w's' and one 'h'; that is, who, what, where, when, why, and how" in order to allow the court to assess the claim and determine whether those facts, if true, are sufficient to entitle the defendant to relief. *Id.* at ¶ 23. A motion would be entirely conclusory, for example, if it alleged no facts and stated only that counsel was ineffective for not preparing adequately for trial. *Id.* at ¶ 21.

In this case, the trial court denied Bealin's motion for postconviction relief without a hearing, finding that trial counsel was not ineffective, and even if trial counsel was deficient, Bealin was not prejudiced. (Docket # 1-1 at 3.) In affirming the trial court's decision, the Wisconsin Court of Appeals cited to *State v. Allen* in finding the court did not err in denying Bealin a *Machner* hearing. In *Lee v. Foster*, 750 F.3d 687 (7th Cir. 2014), the Seventh Circuit held that the rule set forth by the Wisconsin Supreme Court in *State v. Allen*, requiring specific allegations of fact needed to show relief in order to obtain an evidentiary hearing, is an adequate and independent state law basis that precludes federal review under § 2254. The court explained:

> The rule requires a petitioner to provide sufficient material facts, "e.g., who, what, where, when, why, and how-that, if true, would entitle him to the relief he seeks." *Allen*, 682 N.W.2d at 436. Lee contends that the level of specificity in his postconviction motion—as an incarcerated defendant who was purportedly represented by ineffective counsel at both the trial and appellate levels—should be sufficient to withstand review under the *Allen* rule. Yet our review of the adequacy of a state ground is limited to whether it is a firmly established and regularly followed state practice at the time it is applied, not whether the review by the state court was proper on the merits. And the *Allen* rule is a well-rooted procedural requirement in Wisconsin and is therefore adequate. *See, e.g., State v. Negrete*, 343 Wis. 2d 1, 819 N.W.2d 749, 755 (2012); *State v. Balliette*, 336 Wis. 2d 358, 805 N.W.2d 334, 339 (2011); *State v. Love*, 284 Wis. 2d 111, 700 N.W.2d 62, 68–69 (2005); *State v. McDougle*, 347

> Wis. 2d 302, 830 N.W.2d 243, 247–48 (Ct. App. 2013). Consequently, we find the state procedural requirement relied upon by the Wisconsin Court of Appeals both independent and adequate. Lee's ineffective assistance claim is procedurally defaulted.

Courts in this circuit, however, have reasoned that *Lee*'s holding that *Allen* is an *adequate* state rule does not mean that a Wisconsin court's reliance on *Allen* will always be *independent* of the merits of the federal claim. *See Singleton v. Mahoney*, No. 17-CV-898, 2021 WL 848760, at *10 (W.D. Wis. Mar. 5, 2021) (citing *Walker v. Pollard*, No. 18-C-0147, 2019 WL 136694, at *6 (E.D. Wis. Jan. 8, 2019)); *see also Stewart v. Boughton*, No. 18-CV-185, 2020 WL 7479532, at *4 (W.D. Wis. Dec. 18, 2020); *Sulla v. Hepp*, No. 17-CV-987, 2019 WL 1206941, at *3 (E.D. Wis. Mar. 14, 2019).

In fact, the *Walker* court opined that a Wisconsin court's reliance on *Allen* will *rarely* be independent of the federal claim because *Allen* requires a court to apply the relevant substantive law. 2019 WL 136694, at *6. The *Walker* court reasoned that a Wisconsin court can reject a federal claim under *Allen* without considering the merits of that claim in one situation only: "when a court rejects a claim on the ground that it was presented in the postconviction motion in an entirely conclusory fashion[.]" *Id.*

In Bealin's case, while the court of appeals does state that Bealin's postconviction motion relied on "conclusory allegations" (Docket 1-1 at ¶ 26), it also found that the record "conclusively demonstrates" that Bealin was not prejudiced by trial counsel's alleged deficiencies. (*Id.*) In so finding, the court of appeals, citing *Strickland*, conducted a thorough examination of the merits of counsel's alleged errors. Because the court of appeals

11

considered, in detail, the merits of Bealin's ineffective assistance of counsel claim, I do not find that Bealin procedurally defaulted this claim and will address it on the merits.

2. *Merits*

To establish ineffective assistance of counsel, Bealin must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To satisfy *Strickland*'s performance prong, the defendant must identify "acts or omissions of counsel that could not be the result of professional judgment." *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir. 1988) (citing *Strickland*, 466 U.S. at 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689). A reviewing court must seek to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," *id.*, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 690.

To establish prejudice, it is "not enough for the defendant to show that his counsel's errors had some conceivable effect on the outcome of the [trial]." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). A petitioner must show "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. This does not mean that the defendant must show that "counsel's deficient

12

conduct more likely than not altered the outcome in the case." *Id*. at 693. Rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Making this probability determination requires consideration of the totality of the evidence before the jury. *Id.* at 695. A "verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id*. at 696. Additionally, under Seventh Circuit precedent, a petitioner may demonstrate that the cumulative effect of counsel's individual acts or omissions was substantial enough to meet *Strickland*'s prejudice test. *Williams v. Washington*, 59 F.3d 673, 682 (7th Cir. 1995) (citing *Montgomery v. Petersen*, 846 F.2d 407, 412 (7th Cir. 1988); *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 958 (7th Cir. 1986)).

A court deciding an ineffective assistance claim need not approach the inquiry "in the same order or even . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id*.

Here, the court of appeals correctly cited to *Strickland* as the correct legal rule governing Bealin's claim. The only question is whether the state court unreasonably applied *Strickland* to the facts of Bealin's case or unreasonably determined the facts in light of the evidence presented. In analyzing whether Bealin was prejudiced, the court began by observing that whether M.D. communicated with Lee the day of the shooting and whether Bealin stepped out of the car were not determinative facts in the case. The court stated that

13

there was no evidence that there was more than one person in the car or that someone other than the driver pulled the trigger. Rather, the court agreed that the inconsistencies are relevant only to the extent they could have given the jury cause to doubt M.D.'s truthfulness or his ability to see and remember the shooting.

However, the court of appeals reasoned that trial counsel had impeached M.D. and given the jury many reasons to doubt M.D.'s testimony. Trial counsel impeached M.D. with the fact that he was a regular drug user, he was preparing to use drugs at the time of the shooting, and he used drugs and alcohol after the shooting, which led him to forget where he went between the time that he left Bealin's house and later encountered the police officer. Trial counsel also impeached M.D. with the fact that he was not watching Lee and Bealin constantly during their interaction as M.D. was preparing his marijuana and cocaine cigar. Moreover, trial counsel questioned M.D. about asking the police for money and M.D. admitted that he asked the detective for money, and the detective acknowledged that he gave M.D. approximately five dollars.

On this record, Bealin does not show that the court of appeals unreasonably applied *Strickland* to his case or unreasonably determined the facts in light of the evidence presented. It was not unreasonable for the court of appeals to conclude that because trial counsel thoroughly attacked M.D.'s credibility and reliability that his failure to impeach him with these additional two questions was not prejudicial to Bealin. As both the trial judge and the court of appeals pointed out, trial counsel gave the jury plenty reasons to not find M.D. incredible and/or unreliable. In addition to the factors listed by both the trial court and the

14

court of appeals, M.D. himself repeatedly testified that his memory was poor. He also admitted that he had ten prior convictions. Yet, the jury chose to credit M.D.'s testimony that he knew both Bealin and Lee and that he identified Bealin as Lee's shooter. Given the totality of the evidence presented to jury to evaluate M.D.'s testimony, Bealin cannot show that "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. For this reason, Bealin is not entitled to habeas relief.

## CONCLUSION

Bealin alleges he is entitled to habeas relief due to ineffective assistance of trial counsel. Because the court of appeals reasonably applied *Strickland* to Bealin's case, I find that Bealin is not entitled to habeas relief. Thus, Bealin's amended petition for a writ of habeas corpus is denied.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate

15

to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 and n.4).

When issues are resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.* at 485.

Jurists of reason would not find it debatable that Bealin is not entitled to habeas relief. Thus, I will deny Bealin a certificate of appealability. Of course, Bealin retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's amended petition for a writ of habeas corpus (Docket # 8) is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 14th day of February, 2022.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge

17